DALE BISH, State Bar No. 235390
ALLIE M. FELLOWS, State Bar No. 346701
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304
Telephone:   (650) 493-9300
Facsimile:   (866) 974-7329
Email:       dbish@wsgr.com
             afellows@wsgr.com

ELI B. RICHLIN, NY State Bar No. 4861357 (admitted *pro hac vice*)
PAUL C. GROSS, NY State Bar No. 5615687 (admitted *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone:   (212) 999-5800
Facsimile:   (866) 974-7329
Email:       erichlin@wsgr.com
             pgross@wsgr.com

Attorneys for Defendant
DoNotPay, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JONATHAN FARIDIAN, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>DONOTPAY, INC., a Delaware corporation,<br><br>        Defendant. | CASE NO.:  3:23-cv-01692-JD<br><br>**DEFENDANT DONOTPAY, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**<br><br>Date: June 8, 2023<br>Time: 10:00 a.m.<br>Judge: Hon. James Donato<br><br>Date Action Filed: March 3, 2023<br>Date of Removal: April 7, 2023 |

1

## TABLE OF CONTENTS

2

**Page**

3  NOTICE OF MOTION AND MOTION ....................................................................................1

4  STATEMENT OF REQUESTED RELIEF ...........................................................................1

5  MEMORANDUM OF POINTS AND AUTHORITIES .....................................................1

6  INTRODUCTION..................................................................................................................1

7  FACTS ...................................................................................................................................4

8       The Parties ....................................................................................................................4

9       DNP's Terms and Conditions Include a Mandatory Arbitration Clause ...........................5

10       Plaintiff Agreed to DNP's Terms and Conditions Each Time He Opened
An Account ..................................................................................................................5

11

12       Plaintiff's Allegations and Claim ...............................................................................6

     Procedural Background ................................................................................................7

13

LEGAL STANDARDS GOVERNING MOTIONS TO COMPEL ARBITRATION .................7

14

ARGUMENT ...........................................................................................................................8

15  I.      PLAINTIFF AGREED TO ARBITRATE ...............................................................8

16  II.     THE ARBITRATION CLAUSE COVERS THIS DISPUTE ......................................14

17  CONCLUSION .....................................................................................................................15

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Allen v. Shutterfly, Inc.*,
    No. 20-cv-02448-BLF,
    2020 WL 5517172 (N.D. Cal. Sept. 14, 2020) ................................................................. 10

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ......................................................................................................... 7

*Austin v. Lyft, Inc.*,
    No. 21-cv-09345-MMC,
    2022 WL 4095386 (N.D. Cal. Sept. 2, 2022),
    *appeal dismissed*, No. 22-16333,
    2023 WL 2364991 (9th Cir. Feb. 22, 2023) ....................................................................... 1

*Berman v. Freedom Fin. Network, LLC*,
    30 F.4th 849 (9th Cir. 2022) ................................................................................. 3, 8, 12, 13

*Bos. Telecomms. Grp., Inc. v. Deloitte Touche Tohmatsu*,
    249 F. App'x 534 (9th Cir. 2007) .............................................................................. 14, 15

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ........................................................................................... 7

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ......................................................................................................... 1

*Gutierrez v. FriendFinder Networks Inc.*,
    No. 18-cv-05918-BLF,
    2019 WL 1974900 (N.D. Cal. May 3, 2019) ..................................................................... 7

*In re Ring LLC Priv. Litig.*,
    No. CV 19-10899-MWF,
    2021 WL 2621197 (C.D. Cal. June 24, 2021),
    *appeal dismissed*, No. 21-55872,
    2022 WL 3339845 (9th Cir. Aug. 3, 2022) ...................................................................... 11

*Lee v. Ticketmaster L.L.C.*,
    817 F. App'x 393 (9th Cir. 2020) ............................................................................. 11, 12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) .................................................................................................. 14, 15

*Namisnak v. Uber Techs., Inc.*,
    315 F. Supp. 3d 1124 (N.D. Cal. 2018),
    *aff'd*, 971 F.3d 1088 (9th Cir. 2020) ................................................................................. 8

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ........................................................................................... 8

*Peter v. DoorDash, Inc.*,
    445 F. Supp. 3d 580 (N.D. Cal. 2020) ........................................................................ 7, 14

*Pizarro v. QuinStreet, Inc.*,
    No. 22-cv-02803-MMC,
    2022 WL 3357838 (N.D. Cal. Aug. 15, 2022) ............................................................ 10, 12

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ...................................................................................... 14, 15

*Snow v. Nectar Brand, LLC.*,
    No. 2:22-cv-07912-MCS-MRW,
    2023 WL 2558544 (C.D. Cal. Mar. 2, 2023) ............................................................... 10, 12

*Unite Here Int'l Union v. Shingle Springs Band of Miwok Indians*,
    738 F. App'x 560 (9th Cir. 2018) ...................................................................................... 14

*Wilson v. Huuuge, Inc.*,
    944 F.3d 1212 (9th Cir. 2019) ........................................................................................... 13

*Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc.*,
    497 F. App'x 740 (9th Cir. 2012) ....................................................................................... 8

**STATUTES**

9 U.S.C. §§ 1-16 (Federal Arbitration Act) ...........................................................*passim*

California Business and Professional Code § 17200 ...............................................4, 7

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on June 8, 2023, at 10:00 a.m., before the Honorable James Donato, United States District Court, Northern District of California, located at 450 Golden Gate Avenue, Courtroom 11, 19th Floor, San Francisco, California 94102, Defendant DoNotPay, Inc. ("DNP") will move and hereby does move this Court for an order compelling Plaintiff Jonathan Faridian ("Plaintiff") to arbitrate his claims pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16. DNP brings this motion on the ground that the Federal Arbitration Act, 9 U.S.C. §§ 1-16, requires Plaintiff to pursue his claims in accordance with a valid and binding mandatory arbitration agreement between himself and DNP.

This motion is supported by the Memorandum of Points and Authorities, the Declaration of Andrew Kim, all exhibits thereto, and the [Proposed] Order filed concurrently herewith.

**STATEMENT OF REQUESTED RELIEF**

Pursuant to the Federal Arbitration Act, Defendant DNP requests that this Court grant its Motion to Compel Arbitration as Plaintiff's claims are subject to a valid and binding arbitration agreement and Plaintiff must therefore pursue his claims in accordance with the terms of that agreement.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant DNP respectfully submits this Memorandum of Points and Authorities in support of its Motion to Compel Arbitration.

**INTRODUCTION**

Plaintiff's claim cannot be maintained in this Court because it is subject to mandatory arbitration. The Federal Arbitration Act ("FAA") requires that where a party subject to an arbitration agreement (such as Plaintiff) refuses to arbitrate his claim, the district court "*shall direct the parties to proceed to arbitration*" on that claim. *Austin v. Lyft, Inc.*, No. 21-cv-09345-MMC, 2022 WL 4095386, at *1 (N.D. Cal. Sept. 2, 2022) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis in original), *appeal dismissed*, No. 22-16333, 2023 WL 2364991 (9th Cir. Feb. 22, 2023). Plaintiff repeatedly consented to arbitrate any claims against DNP, and the claims he now seeks to assert fall within the scope of that arbitration

1  agreement. Accordingly, and pursuant to Congress's mandate in the FAA, this Court must

2  dismiss the instant case and "make an order directing the parties to proceed to arbitration in

3  accordance with the terms of the[ir] agreement." *See* 9 U.S.C. § 4.

4    *First*, on at least four separate occasions, Plaintiff signed up for a DNP account and, in

5  the process, unambiguously agreed to arbitrate "any claim related to [DNP's] services or terms of

6  use or any controversy related to DoNotPay or arising out of our relationship." Declaration of

7  Andrew Kim ("Kim Decl.") Ex. A. Specifically, each and every time that Plaintiff established one of

8  his four DNP accounts, he was required to view at least one of the below two screens, enter an email

9  address or phone number, and click the button marked either "Sign Up/Login" or "Continue," as

10  found on the applicable screen.

11

12

13

14

15

16

17

18

19

20

21

22        ("**Sign-Up Screen I**")

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12

# Sign in or Sign up

Enter your email or phone number

Email or phone number

**Continue**

By signing up or signing in, you are agreeing to **DoNotPay's Terms
and Conditions** and for us to send messages to the phone number
or email provided.

("**Sign-Up Screen II**")

13    As evident in both screenshots above, printed directly below the box in which Plaintiff

14  was required to enter his phone number or email address prior to clicking either "Sign-up/Login"

15  or "Continue," is the disclaimer: "By signing up or signing in, you are agreeing to <u>DoNotPay's</u>

16  <u>Terms and Conditions</u>[.]"  The underlined "<u>DoNotPay's Terms and Conditions</u>" is a "hyperlink;"

17  clicking on the link directs users (such as Plaintiff) to a separate webpage displaying DNP's

18  complete Terms and Conditions, including the applicable arbitration clause.

19    This method of agreement – whereby a user of an online service (i) receives "reasonable

20  notice" that signing up for or logging into that service amounts to consent to that service's terms

21  and conditions; (ii) has an opportunity to review those terms and conditions via a hyperlink; and

22  (iii) proceeds to sign up or login to such service – constitutes valid and binding consent to the

23  service's terms and conditions, including the arbitration provision.  *See Berman v. Freedom Fin.*

24  *Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) ("[A]n enforceable contract will be found . . . if:

25  (1) the website provides reasonably conspicuous notice of the terms to which the consumer will

26  be bound; and (2) the consumer takes some action, such as clicking a button or checking a box,

27  that unambiguously manifests his or her assent to those terms.").  Accordingly, on at least each

28

1   of the four occasions on which Plaintiff signed up for a DNP account, he consented to DNP's

2   Terms and Conditions, including the mandatory arbitration clause found within.

3         *Second*, there is no question that Plaintiff's sole claim for violations of California

4   Business and Professional Code § 17200 falls within the scope of the arbitration clause.  At all

5   relevant times, DNP's Terms and Conditions provided that "[a]ny dispute (any claim related to

6   [DoNotPay's] services or terms of use or any controversy related to DoNotPay or arising out of

7   our relationship) shall be resolved through binding individual arbitration. No dispute shall be

8   arbitrated or litigated in any purported class or representative proceeding . . . [t]o start an

9   arbitration proceeding, you can do so through the American Arbitration Association (AAA)."

10   Kim Decl. Ex. A.  Here, Plaintiff alleges that he was a DNP subscriber but found that DNP's

11   services were not of the quality he expected.  He seeks recovery of his subscription fee, as well

12   as certain injunctive and declaratory relief.  This claim falls squarely within the arbitration

13   clause's coverage – it is plainly a "claim related to [DoNotPay's] services" which "aris[es] out

14   of" the "relationship" between Plaintiff and DoNotPay.  Kim Decl. Ex. A.

15         In sum, the task for the Court here is simple. Plaintiff was given conspicuous notice that

16   by signing up for DNP's services, he was agreeing to DNP's Terms (which contain an arbitration

17   clause).  He then signed up for DNP's services, and thereby agreed to those Terms, at least four

18   times.  The Terms contain a broad arbitration clause that encompasses this dispute.  "[A]n order

19   directing the parties to proceed to arbitration" should issue.  *See* 9 U.S.C. § 4.

20                                        **FACTS**

21   **The Parties**

22         Defendant DoNotPay, Inc. is a Delaware corporation with its principal place of business

23   in Colorado.  Kim Decl. ¶ 4.  DNP's business is to leverage technology to help its customers

24   accomplish certain administrative tasks, such as contesting parking tickets and demanding owed

25   refunds, quickly and at low cost. *Id.* ¶ 5.

26         Plaintiff Jonathan Faridian, a California resident, is a longtime DNP subscriber.  DNP's

27   records reflect that Plaintiff first purchased a subscription on May 17, 2021.  Kim Decl. ¶ 15.

28   Plaintiff himself alleges that he remained a subscriber until January 2023.  Compl. ¶ 29, ECF No.

1-1, Ex. 1.  DNP's records further reflect that, during that roughly 18-month window, Plaintiff

established a total of four DNP accounts. Kim Decl. ¶ 14.  Plaintiff's use of DNP's services was

active and regular.  In total, he requested that DNP perform ***234 tasks*** on his behalf, including

claiming previously unclaimed property in his name.  Kim Decl. ¶ 20.

**DNP's Terms and Conditions Include a Mandatory Arbitration Clause**

At all relevant times, the Terms and Conditions governing DNP's relationship with its

customers contained a clause requiring that "[a]ny dispute (any claim related to [DoNotPay's]

services or terms of use or any controversy related to DoNotPay or arising out of our

relationship) shall be resolved through binding individual arbitration."  Kim Decl. Ex. A.  That

clause is copied below, in full.

> Any dispute (any claim related to the services or terms of use or any controversy related to DoNotPay or arising out of our relationship) shall be resolved through binding individual arbitration. No dispute shall be arbitrated or litigated in any purported class or representative proceeding. Furthermore, you and DoNotPay Inc. each agree to waive the right to participate in a class action, the right to a trial by jury, and the right to litigate on a class-wide basis. The Federal Arbitration Act governs the interpretation and enforcement of this arbitration provision, which shall survive termination or expiration of these Terms.

> You can opt out of arbitration if you provide written notice within 30 days following the date you first agree to these Terms and send written notice by registered mail clearly stating your desire to do so to the following address: 164 Townsend Street, Unit #2, San Francisco, CA 94107. To start an arbitration proceeding, you can do so through the American Arbitration Association (AAA), which can be found at www.adr.org. Furthermore, you must send any notices relating to arbitration to DoNotPay Inc., 164 Townsend Street, Unit #2, San Francisco, CA 94107. We will reimburse all fees or costs for disputes or claims less than $10,000, unless the Arbitrator finds your claim(s) to be frivolous. Kim Decl. Ex. A.

**Plaintiff Agreed to DNP's Terms and Conditions Each Time He Opened An Account**

In order to create an account with DNP, a user must visit DNP's website

(DoNotPay.com) where the user is presented with one of the two Sign-Up Screens printed above.

*See* Kim Decl. ¶¶ 11, 14.  Which of the two screens a user finds on DNP's website depends both

on the date of the user's visit and the particular method selected to create an account (DNP offers

options to create accounts both immediately upon arriving at the website and in connection with

pages describing DNP's various products).  *See* Kim Decl. ¶¶ 15-18.  In either case, a user

desiring to create an account must enter their email address or phone number in the white box

with grey text reading "Email or phone number," click the button marked "Sign Up/Login" (on Sign-Up Screen I) or "Continue" on (Sign-Up Screen II) and proceed through a series of further steps.  Kim Decl. Ex. B.  DNP's records, as they are kept in the ordinary course of business, reflect that that Plaintiff interacted with the two Sign-Up Screens as follows (all times are in the Pacific Time Zone):

- On May 17, 2021, at approximately 9:35 a.m., Plaintiff entered his phone number in the box on **Sign-Up Screen I** and clicked the large pink button marked "Sign-Up/Login."

- On June 17, 2021, at approximately 11:05 a.m., Plaintiff created a DNP account through either Sign-Up Screen I or Sign-Up Screen II using his email address.  Due to a technical issue, DNP records do not reflect which Sign-Up Screen Plaintiff used in creating this account; however, at the relevant time, the *only* two ways to create a DNP account were through Sign-Up Screen I or Sign-Up Screen II.  Accordingly, Plaintiff signed up through one of those screens by entering his email address and clicking the large pink button manifesting his assent to the Terms and Conditions.

- On July 2, 2021, at approximately 9:43 p.m., Plaintiff entered his phone number in the box on **Sign-Up Screen II** and clicked the large pink button marked "Continue."

- On March 28, 2022, at approximately 3:44 a.m., Plaintiff entered his phone number in the box on **Sign-Up Screen II** and clicked the large pink button marked "Continue."

Kim Decl. ¶¶ 14-18.

Per the above, on four occasions, Plaintiff entered contact information on a Sign-Up Screen, was presented with the disclaimer reading "By signing up or signing in, you are agreeing to DoNotPay's Terms and Conditions[,]" and clicked the appropriate button, thereby entering a binding agreement to the Terms and Conditions, including the arbitration clause. Kim Decl. Ex. B.  Plaintiff did not opt out of arbitration within the time allotted under the Terms and Conditions.  Kim Decl. ¶ 19.

**Plaintiff's Allegations and Claim**

Plaintiff alleges that he subscribed to DNP's services under the mistaken impression that such services would be provided by "a lawyer that was competent to provide them."  Compl. ¶¶

30-31.  In Plaintiff's view, however, DNP's services were "substandard and poorly done."  *Id.* ¶ 33.  Plaintiff avers that he "would not have paid to use DoNotPay's services had he known that DoNotPay was not actually a lawyer."  *Id.* ¶ 35.

On these allegations, Plaintiff asserts a single claim for violations of California Business and Professional Code § 17200.  Compl. ¶¶ 43-49.  He seeks recovery of his subscription fee, declaratory relief, injunctive relief, and any other relief that "equity and justice may require."  *See id.* ¶¶ 48-49 & Prayer for Relief.  Plaintiff further seeks to represent a class of "All residents of the State of California who purchased subscriptions to DoNotPay.com."  *Id.* ¶ 36.

**Procedural Background**

On March 3, 2023, Plaintiff filed his putative class action complaint (the "Complaint" or "Compl.") in California Superior Court, San Francisco County.  ECF No. 1-1, Ex. 1.  DNP accepted service of the Complaint on March 11, 2023.  On April 7, 2023, DNP timely removed this action to this Court.  ECF No. 1.

**LEGAL STANDARDS GOVERNING MOTIONS TO COMPEL ARBITRATION**

"A party aggrieved by the . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed[.]"  Federal Arbitration Act, 9 U.S.C. § 4.  The FAA embodies a "liberal federal policy favoring arbitration" and requires courts to "enforce [arbitration agreements] according to their terms[.]"  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted).  "[T]he [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'"  *Gutierrez v. FriendFinder Networks Inc.*, No. 18-cv-05918-BLF, 2019 WL 1974900, at *2 (N.D. Cal. May 3, 2019) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

In deciding whether to compel arbitration based on a contractual clause, the district court's role is limited to answering only two questions: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."

1  *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 583 (N.D. Cal. 2020) (quoting *Chiron*, 207 F.3d at

2  1130).  If both questions are answered in the affirmative, the court ***must*** compel arbitration. *Id.*

3      "Where a contract contains an arbitration clause, courts apply a presumption in favor of

4  arbitrability as to particular grievances, and the party resisting arbitration bears the burden of

5  establishing that the arbitration agreement is inapplicable." *Wynn Resorts, Ltd. v. Atl.-Pac.*

6  *Capital, Inc*., 497 F. App'x 740, 742 (9th Cir. 2012).

7                                            **ARGUMENT**

8  **I.      Plaintiff Agreed to Arbitrate**

9      "In the context of an electronic consumer transaction, the occurrence of mutual assent

10 ordinarily turns on whether the consumer had reasonable notice of a merchant's terms of service

11 agreement." *Namisnak v. Uber Techs., Inc.*, 315 F. Supp. 3d 1124, 1127 (N.D. Cal. 2018) (citing

12 *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1173 (9th Cir. 2014)), *aff'd*, 971 F.3d 1088 (9th

13 Cir. 2020).  Recently, in *Berman v. Freedom Financial Network LLC*, the Ninth Circuit clarified

14 the standards under which courts evaluate "reasonable notice" in the context of online contract

15 formation.

16     There, the Circuit explained that "[w]ebsite users are entitled to assume that important

17 provisions—such as those that disclose the existence of proposed contractual terms—will be

18 prominently displayed[.]" *Berman*, 30 F.4th at 857.  The *Berman* panel then set forth three

19 general principles to aid web designers in confirming that their respective "sign-up screens"

20 sufficiently provide notice of assent to terms and conditions.

21     *First*, "a notice must be displayed in a font size and format such that the court can fairly

22 assume that a reasonably prudent Internet user would have seen it." *Id.* at 856.  That is, the font

23 and formatting of that notice must not be "so small that it is barely legible to the naked eye." *Id.*

24 at 856-57.  *Second*, "while it is permissible to disclose terms and conditions through a hyperlink,

25 the fact that a hyperlink is present must be readily apparent. . . . [c]onsumers cannot be required

26 to hover their mouse over otherwise plain-looking text or aimlessly click on words on a page in

27 an effort to 'ferret out hyperlinks.'" *Id.* at 857 (quoting *Nguyen*, 763 F.3d at 1179).  And, *third*,

28

"the notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement."  *Id.* at 858.

Both of DNP's Sign-Up Screens easily meet or exceed these standards.  On Sign-Up Screen I, the notice of the Terms and Conditions is printed in clear, light-colored font of readable size, and is contrasted against a richly colored background.  It is also positioned directly below the box where customers must enter contact information, increasing the likelihood that a customer would see the notice.  The hyperlink disclosing the terms, too, is underlined to set it apart from other words in a brief, uncluttered sentence – there is no risk that a customer would need to "aimlessly click on words" to "ferret out" the hyperlink to DNP's Terms.  Last, the notice is very clear as to the significance of clicking the button marked "Sign Up/Login" – the notice says "***By signing up or signing in***, you are agreeing to <u>DoNotPay's Terms and Conditions</u>."  Kim Decl. Ex. B. (emphasis added).  This clearly notifies a user of the significance of signing up to DNP's services by clicking the large button on Sign-Up Screen I.

Sign-Up Screen II, likewise, shares each of the traits above that make Sign-Up Screen I's notice of the Terms and Conditions sufficiently conspicuous.  Above and beyond those traits, though, Sign-Up Screen II arguably provides *even more* conspicuous notice of the Terms and Conditions.  On Sign-Up Screen II, the font of the contractual disclaimer is larger than the already-large-enough font on Sign-Up Screen I, and the hyperlink to the Terms and Conditions (in addition to being underlined) is printed in an eye-popping magenta, which stands out against the blank white background.

Numerous courts in this Circuit have found that sign-in screens similar to, or *less* conspicuous than, DNP's provide adequate notice.  Below, DNP submits a sampling of such screens – all of which have been deemed to provide sufficient notice of assent to the terms and conditions by courts in this Circuit.

1

2

3

| Examples of Screens Found to Provide Sufficiently Conspicuous Notice of Assent to Terms | |
|---|---|
| <br><br>*Snow v. Nectar Brand, LLC.*, No. 2:22-cv-07912-MCS-MRW, 2023 WL 2558544, at *2-3 (C.D. Cal. Mar. 2, 2023). | <br><br>*Pizarro v. QuinStreet, Inc.*, No. 22-cv-02803-MMC, 2022 WL 3357838, at *1 (N.D. Cal. Aug. 15, 2022). |
| <br><br>*Allen v. Shutterfly, Inc.*, No. 20-cv-02448-BLF, 2020 WL 5517172, at *6 (N.D. Cal. Sept. 14, 2020). | |



*In re Ring LLC Priv. Litig.*, No. CV 19-10899-MWF (RAOx), 2021 WL 2621197, at *9 (C.D. Cal. June 24, 2021), *appeal dismissed*, No. 21-55872, 2022 WL 3339845 (9th Cir. Aug. 3, 2022) (one of several screens found to be sufficiently conspicuous).

*Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020).

///

The above are but a few recent examples.  And, crucially, DNP's Sign-Up Screens (copied again, below) provides as conspicuous *or more conspicuous* notice of its contractual disclaimer and hyperlinked terms than the screens in the cases cited above.



In *Pizarro v. QuinStreet*, for instance, the screen in question had *two* data fields (as opposed to just one on DNP's screens), multiple links to various agreements and terms (as opposed to just one on DNP's), and several paragraphs of text in the notice (as opposed to a single sentence on DNP's Sign-Up Screens).  In *Nectar Brand*, the screen confusingly presents two "check boxes" which have nothing to do with consent to the terms of service and provides notice of the terms in much smaller font than the text next to the check boxes.  DNP's Sign-Up Screens, each of which have only a single field to enter data and no distracting "check-boxes," are much clearer.  And, in *Ticketmaster*, the terms are positioned far away from the button used to manifest assent – the lines "Forgot Password" and "New to Ticketmaster? Sign up" separate the method of assent from the disclaimer *and* are in larger font than the disclaimer.

Yet, despite each of these flaws just referenced – *none of which* applies to DNP's Sign-Up Screens – each court in the above cases nevertheless found that applicable sign-in screen is sufficient to bind a user to the terms and conditions linked thereto.

Contrasting these screens with those held to provide *insufficient* notice of assent to terms is also valuable in demonstrating why DNP's Sign-Up Screens so clearly satisfy *Berman*'s requirements.  The below screens are from the *Berman* case itself, and the Ninth Circuit's

1    decision in *Wilson v. Huuuge, Inc.*, both instances in which the court found that screens were not

2    adequate to put customers on notice.

| Examples of Screens Deemed Insufficient to Provide Notice of Assent to Terms |
|---|



*Berman*, 30 F.4th at 861.



*Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1217 (9th Cir. 2019) (red circle added by the court).

23        Unlike the screens that provide adequate notice, a user *actively* seeking to find the notice

24   of terms and conditions on the screens from *Berman* and *Huuuge* would struggle to do so.  The

25   notices are sandwiched between numerous buttons, directives and other disclaimers.  In *Berman*,

26   the notice of terms is directly below a field requesting that a user identify his/her *gender*, which

27   of course has nothing to do with assenting to terms and conditions.  And, in *Huuuge*, the terms

1    are not even hyperlinked – a user must actively enter a web address into a separate browser in

2    order to access the terms and arbitration clause therein.

3          DNP's Sign-Up Screens provide notice of assent to terms that is miles more conspicuous

4    than the screens directly above.  As such, based on ample precedent from this Circuit, DNP's

5    Sign-Up Screens provide reasonably conspicuous notice that by signing up, a user is agreeing to

6    the Terms and Conditions.  As documented in the Declaration of Andrew Kim, Plaintiff signed

7    up through these screens on at least four occasions (*see* Kim Decl. ¶ 14) and thus he, too, is

8    bound by DNP's Terms, including the arbitration clause.[1]

9    **II.      The Arbitration Clause Covers this Dispute**

10         Once it has been shown that the parties agreed to arbitrate certain disputes, the only

11   remaining question for the Court is whether that agreement governs the dispute at hand.  *See*

12   *DoorDash, Inc.*, 445 F. Supp. 3d at 583.  In making this inquiry, the Ninth Circuit repeatedly has

13   cautioned that "[t]he standard for demonstrating arbitrability is not high" and that "any doubts

14   concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Bos.*

15   *Telecomms. Grp., Inc. v. Deloitte Touche Tohmatsu*, 249 F. App'x 534, 538 (9th Cir. 2007)

16   (citation omitted) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S.

17   614, 626 (1985)); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (same).  Put

18   another way, courts must compel arbitration unless it can be said with "positive assurance" that

19   the relevant agreement "is not susceptible of an interpretation that covers the asserted dispute."

20   *See Unite Here Int'l Union v. Shingle Springs Band of Miwok Indians*, 738 F. App'x 560, 561

21   (9th Cir. 2018) (citation omitted).

22         Here, Plaintiff's complaint regarding the alleged quality of DNP's services is obviously a

23   "claim related to [DNP's] services" arising out of his relationship with DNP.  Any other finding

---

24   [1] Importantly, given Plaintiff's active and continuous use of DNP's services – for a total of ***234
25   tasks*** – it is highly likely that Plaintiff had numerous other opportunities to review the Terms and
     Conditions and was repeatedly informed that they governed his relationship with DNP.  *See* Kim
26   Decl. ¶ 20.  Moreover, from an equitable perspective, Plaintiff is not situated similarly to a
     customer who makes a one-time transaction with a merchant and then is forever bound by terms
27   of service – here, Plaintiff established and made beneficial use of a lengthy relationship with
     DNP; equity requires that he be held to the Terms and Conditions, including the arbitration
28   clause.

1 | would disregard the Ninth Circuit's requirement that "doubts concerning the scope of arbitrable

2 | issues" be resolved in favor of arbitration. *Bos. Telecomms*., 249 F. App'x at 538 (quoting

3 | *Mitsubishi*, 473 U.S. at 626).  *See also Simula*, 175 F.3d at 720 (noting that a district court's

4 | "narrow interpretation" of a broad arbitration clause "conflicted with the strong federal policy

5 | favoring arbitral dispute resolution").

6 | ### CONCLUSION

7 | For the reasons stated herein, Defendant DoNotPay, Inc. respectfully requests that its

8 | motion to compel be granted.

10 | Respectfully submitted,

11 | Dated: April 28, 2023

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ *Dale Bish*

DALE BISH, State Bar No. 235390
ALLIE M. FELLOWS, State Bar No. 346701
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (866) 974-7329
Email: DBish@wsgr.com
Email: afellows@wsgr.com

ELI B. RICHLIN, NY State Bar No. 4861357
(admitted *pro hac vice*)
PAUL C. GROSS, NY State Bar No. 5615687
(admitted *pro hac vice*)
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: erichlin@wsgr.com
Email: pgross@wsgr.com

Attorneys for Defendant
DoNotPay, Inc.