Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Edelson PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Jay Edelson (*pro hac vice*)
jedelson@edelson.com
J. Eli Wade-Scott (*pro hac vice*)
ewadescott@edelson.com
Emily Penkowski (*pro hac vice*)
epenkowski@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| JONATHAN FARIDIAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DONOTPAY, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 3:23-cv-01692-JD<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**<br><br>Date: June 22, 2023<br>Time: 10:00 a.m.<br>Judge: Hon. James Donato<br>Courtroom: 11, 19th Floor<br><br>Date Action Filed: March 3, 2023<br>Date of Removal: April 7, 2023<br><br>**<u>FILED UNDER SEAL</u>** |

Both before and since filing this Motion, Plaintiff has asked DoNotPay to explain the basis for its assertion of federal jurisdiction. Rather than do that in its Opposition, DoNotPay provided exactly zero new information and simply points the Court back to its original notice of removal. Abandoning a substantive explanation, DoNotPay primarily concerns itself with shielding its CEO from a two-hour deposition. DoNotPay invokes the "apex deponent" doctrine to do that, but it doesn't apply here to shelter Mr. Browder—DoNotPay only has seven employees, Mr. Browder included.[1] Mr. Browder is the only person who isn't a software developer or a product manager, the only person who oversees its operations, and the company is (according to him) run out of his father's $29 million ski home. The company's internet bill, evidently, went directly to Mr. Browder. He is also the only employee who has repeatedly made public statements relevant to jurisdiction—providing information about the company's subscribers and describing the company's California operations—that contradict information that DoNotPay's counsel is providing to Plaintiff.

In parallel with this Motion, Plaintiff and DoNotPay have continued discussions, but that has only raised more questions. DoNotPay's counsel offered Plaintiff one additional fact on April 27: a total, worldwide number of subscribers. From there, DoNotPay made a number of unsupported leaps to arrive at both an estimated class size and estimated restitution per class member that would place just over $6 million in controversy. DoNotPay has since doubled down on its refusal to simply look at its own records to definitively answer these questions. Meanwhile, Mr. Browder has repeatedly called into question the actual number of subscribers in a series of public statements as recently as last week.

Instead of engaging with the actual facts, DoNotPay wants to paint a picture that Plaintiff is unwilling to work with the company on an alternative resolution of the motion. That is simply untrue and, at some point, a tiresome sideshow. The information that DoNotPay has provided to Plaintiff comes nowhere near conclusively demonstrating that jurisdiction exists, and the parade of contradictions requires the back-and-forth of a deposition to test. But as Plaintiff has said, it does not

---

[1] *See* Joshua Browder (@jbrowder1), TWITTER (May 1, 2023, 1:44 AM), https://twitter.com/jbrowder1/status/1652927031146053632 ("DoNotPay is only 7 employees + 9 contractors. 16 total.").

have to be Mr. Browder: Plaintiff has also proposed a limited 30(b)(6) deponent as an alternative. Given the extent of Mr. Browder's personal knowledge on the jurisdictional facts, that is no doubt the less efficient path, but Plaintiff has made the offer all the same. Plaintiff's Motion should be granted.

**I.    Plaintiff's pre-filing efforts to discuss jurisdiction were stonewalled.**

DoNotPay's Opposition crafts a narrative that Plaintiff is seeking to depose Mr. Browder on limited jurisdictional issues for some unspecified nefarious purpose, apparently based on Plaintiff's counsel's public statements in this admittedly high-profile case.[2] But Plaintiff is open to receiving information from DoNotPay that would resolve this Motion and has continued to discuss that with DoNotPay after this Motion was filed. The problem is that those discussions have been fruitless, because DoNotPay is doing everything it can to avoid pinning itself down on the facts.

DoNotPay's narrative that Plaintiff's counsel has not attempted to work with them is simply false. After DoNotPay removed this case to federal court, Plaintiff emailed DoNotPay on April 10,

---

[2] DoNotPay includes screenshots from Jay Edelson's Twitter account that discuss this case. At the risk of needlessly engaging on a trivial point, Mr. Edelson was generally responding to Mr. Browder's efforts to smear anyone who attempts to question the company's practices. Here, that smear was Mr. Browder's claim that "Jay Edelson inspired me to start DoNotPay because he symbolizes everything wrong with the law. In a recent Facebook settlement, for example, he made $97,500,000. A minority of consumers made $375 and, the majority, who couldn't fill out complicated 'claim forms,' got $0." Joshua Browder (@jbrowder1), TWITTER (Mar. 9, 2023, 11:20 AM), https://twitter.com/jbrowder1/status/1633880538674262016. None of this is accurate. For one, Mr. Browder has presented a number of alternative origin stories for the company—usually based on wanting to avoid paying parking tickets. SaaSTR, *Being a Rebel to Build a Movement: Non-Traditional Approaches to Scale | DoNotPay CEO Joshua Browder*, YOUTUBE, (Apr. 6, 2023) https://www.youtube.com/watch?v=kORBMIxRLs4, at 1:10 (hereinafter "SaaSTR Talk"). And the Facebook settlement (which resulted in $430 per claimant) saw historic claims rates which signify an important shift in how courts evaluate class settlements, *see* Jay Edelson and Amy Hausmann, *Plaintiffs Bar Should Work To Raise Class Action Claims Rates*, LAW360 (Mar. 7, 2022), available at https://edelson.com/wp-content/uploads/2023/05/Plaintiffs-Bar-Should-Work-To-Raise-Class-Action-Claims-Rates.pdf, and had a claim form that took approximately 60 seconds to complete. And Mr. Edelson, of course, was not the sole beneficiary of the fee award.
  None of this invective by Mr. Browder is accidental. Mr. Browder has said publicly that he has developed a unique "cheat code" to grow his business, based on appealing to one of four primary emotions in potential customers: wrath, greed, lust and envy, with a principal emphasis on wrath. *See* SaaSTR Talk at 4:55. While demonizing his opponents may help attract customers, it does not show much commitment to accuracy.

2023 to inquire about the claimed basis for jurisdiction and requested a deposition of Mr. Browder (limited in time and via Zoom) to test what appeared to be questionable factual assertions. Declaration of Emily E. Penkowski ("Penkowski Decl.") ¶ 2, Ex. 1 at 1 (Emails between Plaintiff's Counsel and Defendant's Counsel [hereinafter "Initial Emails"]). On April 12, DoNotPay refused to provide any other information other than a cite to *Dart Cherokee Basic Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014), and refused the deposition. Initial Emails at 2. Plaintiff's counsel followed up, this time just attempting to confirm the basis for diversity jurisdiction. *Id.* at 3. DoNotPay's counsel didn't respond until the day this Motion was filed, but again did not provide any meaningful basis even for this assertion. *Id.* To the extent this does not put an end to the finger-pointing as to why this matter requires the intervention of the Court, DoNotPay's subsequent "proffer" of information to Plaintiff should make that clear.

**II.     DoNotPay's calculated amount-in-controversy relies on unreasonable assumptions.**

In its Opposition, DoNotPay had the opportunity to explain to the Court what amount it believes is in controversy, how it performed its calculations, what information it relied upon, and why its assumptions were reasonable, as well as its basis for asserting the principal place of business is Colorado. It did not. DoNotPay's Opposition only refers the Court back to its barebones notice, and handwaves at a "chain of reasoning" the reasonableness of which was refuted in Plaintiff's instant Motion. *Compare* Opp. at 8-9 (asserting that because "thousands" of users are at issue and injunctive relief could cost Defendant unspecified money, "there is ample basis to conclude that CAFA's threshold is met"), *with* Mot. at 4-6 (demonstrating that the maximum amount of restitution is well below CAFA's threshold even for thousands of California residents; complying with an injunction could cost Defendant nothing). As to diversity jurisdiction, DoNotPay largely abandons the argument—now, pointing to damages for claims that are not requested in the Complaint. Opp. at 9. The Complaint requests only restitution, injunctive relief, and fees (the last of which follows the other components). Compl. ¶¶ 47-48; Mot. at 2-3. As discussed below, the costs for injunctive relief—halting DoNotPay's improper legal services—should cost nothing, since Mr. Browder has repeatedly insisted that those services are already gone.

PLAINTIFF'S REPLY ISO MTN. FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY     -3-     CASE NO. 3:23-CV-01692-JD

Over email, however, DoNotPay continues to attempt to defend CAFA jurisdiction based on a set of calculations showing how it arrived at $5 million in controversy for the class, all based on a single fact: its total number of subscribers since the company's founding (217,700). Penkowski Decl. ¶ 3, Ex. 2 (Emails Concerning Proffer between Plaintiff's Counsel and Defendant's Counsel [hereinafter "Proffer Emails"]).[3] This is the *only* fact provided from DoNotPay's records, and from there it attempts to assume its way to federal jurisdiction. First, instead of providing the actual number of California subscribers,[4] it assumes that 15% of its subscribers are in California, for a total of 32,655. Proffer Emails at 4. Then it assumes that each subscriber paid $190.50, half of the absolute maximum amount a subscriber may have paid since 2017. It multiplies its assumed number of California subscribers by $190.50 to reach an amount-in-controversy of just over $6 million. *Id.*

These assumptions are unreasonable. DoNotPay justifies assuming 15% of its subscribers are in California because California contains 12% of the U.S. population and, as DoNotPay was apparently founded in California, it sees fit to add three percentage points. *Id.* However, DoNotPay is not only in the United States—its assumption does not take into account the population of the United Kingdom, where DoNotPay also operates. In fact, when DoNotPay launched in 2015 it only operated in only the United Kingdom and New York. It was not even available in California until July 2017. Mot. at 4. California residents therefore likely make up substantially fewer than 15% of DoNotPay's total subscribers. Next, DoNotPay assumes that each person paid, on average, $190.50, by taking half of the maximum possible amount that each class member could have paid. Proffer Emails at 4. This amount is not based on any actual records of DoNotPay, but on *Plaintiff's*

---

[3] DoNotPay has provisionally designated this number as confidential pending the entry of a protective order. *See* Proffer Emails at 4. Given the number of times that Mr. Browder has publicly discussed subscriber numbers, however, Plaintiff does not believe DoNotPay has met its burden to demonstrate that this fact should properly be kept confidential. It is redacted here only pursuant to the Parties' agreement (so that Plaintiff could receive this information) pending further review.

[4] DoNotPay stated that it does not possess location information for its customers, beyond IP addresses which it has refused to use. Proffer Emails at 8. This is not credible, as technology companies frequently collect such data and DoNotPay's business may require customer addresses for the legal services it provides. In fact, DoNotPay's terms of service disclose that they may collect addresses, as well as tracking information that can reveal customer locations. *See* Penkowski Decl. ¶ 4, Ex. 3 at 12-13 (DoNotPay's Terms of Service and Privacy Policy).

PLAINTIFF'S REPLY ISO MTN. FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY -4- CASE NO. 3:23-CV-01692-JD

assumptions about the maximum possible amount spent in the opening Motion. *See Harvey v. Advisors Mortg. Grp., LLC*, No. 21-CV-1048 TWR (AGS), 2021 WL 4521065, at *4 (S.D. Cal. Oct. 4, 2021) (disregarding an assumed violate rate where not "'relatively conservative and based on evidence'" (*quoting Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009)). Once again, it is not clear why DoNotPay uses these assumptions instead of its own records.

Finally, and in response to Plaintiff asking DoNotPay to rely on its actual revenue from subscribers, DoNotPay stated only that it could not share that figure because it is "commercially sensitive." Plaintiff agreed to accept designations of information as confidential pending the entry of a protective order, *see* Proffer Emails at 16, so the refusal to provide this information does not make sense. But, DoNotPay assures Plaintiff, its total revenue "*far* exceeds $5 million, the maximum potential recovery suffices for CAFA's jurisdictional threshold." Proffer Emails at 8. Of course, this representation is not sufficient, because total revenue would include all fifty states and the United Kingdom, but the Complaint only requests restitution for California users. Compl. ¶¶ 36, 48.

The assumptions DoNotPay used to find over $5 million in controversy are unreasonable, based in speculation rather than evidence, and therefore should not be accepted at face value by the Court. "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197, (9th Cir. 2015). Where the defendant makes assumptions not alleged in the complaint, the defendant "bears the burden to show that its estimated amount in controversy relied on reasonable assumptions." *Id.* at 1199. Even where a defendant submits a declaration containing facts such as "the number of putative class members," which is more than DoNotPay did, the remaining calculations may still be invalid if they rely on unreasonable assumptions. *Gonzalez v. Randstad Pros. US, LLC*, No. 2:22-CV-05744-JLS-PD, 2022 WL 17081053, at *2 (C.D. Cal. Nov. 18, 2022) (100% violation rate was unreasonable assumption when calculating amount-in-controversy). DoNotPay's assumptions are not reasonable, and must be tested with limited discovery.

PLAINTIFF'S REPLY ISO MTN. FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY -5- CASE NO. 3:23-CV-01692-JD

**III. Deposing Mr. Browder remains the most efficient way to gain firsthand knowledge relevant to federal jurisdiction.**

DoNotPay's Opposition, and its proffer to Plaintiffs, demonstrates exactly why a deposition is the most appropriate form of discovery to ascertain jurisdiction. While DoNotPay insists the jurisdictional facts are "readily obtainable," Opp. at 6, it has provided essentially none of them—and what it has provided only demonstrate the need for a deposition.

- First, there is a significant conflict between what DoNotPay claims the total number of users is (historical and current) and Mr. Browder's constantly shifting positions on the same fact. Mr. Browder claimed in a public presentation at a conference in September 2022 that "hundreds and hundreds of thousands of people use DoNotPay.com every hour," and that the company gets "about 6 million users visiting our website a month."[5] On another occasion, Mr. Browder represented that "perhaps a million" people used DoNotPay in 2019 just to cancel gym memberships.[6] In a recent podcast interview in February 2023, he claimed that DoNotPay has "over 300,000 active subscribers," but "millions of people" have used it since its launch.[7] And then just last week, Mr. Browder tweeted that the company has "well over 200,000 subscribers" currently.[8] While all of these exceed the claims of DoNotPay's lawyers in support of jurisdiction (217,700 subscribers over all time), the point is that the company is not a reliable narrator of the underlying facts. As the case progresses, Plaintiff believes that it will become clear that Mr. Browder says in one instance bears little resemblance to what he might say at a later date. This underscores the need for DoNotPay to provide requisite details, subject to additional questions, to assess if the jurisdictional threshold has actually been met.

---

[5] SaaSTR Talk at 17:05, 19:27.
[6] Tatum Hunter, *How DoNotPay's Bots Battle Bureaucracy*, BUILTIN.COM (Jul. 18, 2020), https://builtin.com/artificial-intelligence/legal-bots.
[7] LawNext, *A Bit of a Nothingburger: Joshua Browder Speaks to the DoNotPay Controversy*, (Feb. 9, 2023), https://www.lawnext.com/2023/02/on-lawnext-podcast-a-bit-of-a-nothingburger-joshua-browder-speaks-to-the-donotpay-controversy.html, at 34:50.
[8] Joshua Browder (@jbrowder1), TWITTER (May 1, 2023 1:44 AM), https://twitter.com/jbrowder1/status/1652927031146053632.

- Second, DoNotPay has only supported its alleged principal place of business with a corporate registration in Colorado from *after* the Complaint was filed and, directly to Plaintiff, documents showing it cancelled an internet service and decreased (but did not shut off) electricity consumption at its San Francisco office location in May 2022. Proffer Emails at 10-14. Plaintiff still has received no information about what actual activities DoNotPay conducts in Colorado, and who conducts them, but there is plenty of indication that places it in California during the relevant period instead. Mot. at 8.[9] Mr. Browder, in the same talk referenced above, said that DoNotPay's staff "were sitting in our office on Townsend Street in San Francisco" in June 2022.[10] But in a declaration filed in another case, Mr. Browder stated that operations in California ended in "late 2021." Penkowski Decl. ¶ 5, Ex. 4 (Declaration of Joshua Browder, *Tewson v. DoNotPay, Inc.*). Browder himself claims to be one of the (evidently two) employees working in Colorado, *id.*, but a Tweet just last week in May 2023 showed him setting up mail forwarding from a California address.[11] Again, the constantly shifting claims and contradictory facts demand further exploration.

- Third, Mr. Browder stated months ago—in January 2023—that DoNotPay had deprecated the legal functions of the service, and doubled down in an interview in February 2023.[12] Yet DoNotPay continues to assert that complying with an injunction would cost substantial money because it would have to evaluate whether it has actually done so. Proffer Emails at 8; Opp. at 7-8. The extent to which DoNotPay has actually deprecated its legal functions seems to be central to the company's claims of jurisdiction, but DoNotPay's lawyers are not willing to offer concrete information about whether it actually did.

Unlike the other forms of evidence DoNotPay suggests (interrogatories, document production, or a declaration from an employee with personal knowledge of such facts), depositions allow for follow-

---

[9] Of DoNotPay's seven employees, three appear to be located in the San Francisco Bay Area, one in Austin, Texas, and another in Colorado Springs, Colorado. *See* fn. 8.
[10] SaaSTR Talk at 21:45.
[11] Joshua Browder (@jbrowder1), TWITTER (May 2, 2023, 6:45 PM), https://twitter.com/jbrowder1/status/1653546356966039552.
[12] *A Bit of a Nothingburger: Joshua Browder Speaks to the DoNotPay Controversy*, *supra*, at 34:50.

up questions. *Sadowski v. Tech. Career Insts., Inc.*, No. 93 Civ. 455 (PKL), 1994 WL 240546, at *1 (S.D.N.Y. May 27, 1994) ("The use of oral depositions is often crucial to an attorney's assessment of the opposing party's case and to preparation for a trial. That is particularly true when, as here, the key issues involve a fairly tangled set of facts that are not susceptible to proof by documentation, and there are potentially significant questions of credibility."); *Nat. Res. Def. Council v. Zinke*, No. 105CV01207LJOEPG, 2018 WL 1899609, at *16 (E.D. Cal. Apr. 20, 2018), *modified*, No. 105CV01207LJOEPG, 2018 WL 2567652 (E.D. Cal. May 18, 2018), *report and recommendation adopted*, No. 105CV01207LJOEPG, 2018 WL 2382798 (E.D. Cal. May 25, 2018) ("deposition testimony is superior to interrogatories in the ability to ask follow-up questions and clarifications").

Mr. Browder is the best deponent for jurisdictional discovery because he has personal, firsthand knowledge of the facts relevant to establishing federal jurisdiction, and no "lower-level executives" can speak to the same. *Morris v. Camden Dev., Inc.*, No. CV 18- 3089-GW (FFMx), 2018 WL 4156593, at *2 (C.D. Cal. Aug. 27, 2018) (ordering deposition of a non-senior executive). DoNotPay invokes the apex deponent doctrine, which allows a court to preclude the deposition of a high-level executive without personal knowledge of the matter, in an attempt to avoid Mr. Browder's deposition. Opp. at 6. The doctrine, however, "does not apply to individuals with firsthand knowledge of relevant information." *Affinity Labs of Texas v. Apple, Inc.*, No. C 09-4436 CW JL, 2011 WL 1753982, at *2 (N.D. Cal. May 9, 2011); *see also The Apple iPod iTunes Antitrust Litig.*, No. C05-00037 JW HRL, 2011 WL 976942, at *2 (N.D. Cal. Mar. 21, 2011) (Steve Jobs had "unique firsthand, non-repetitive knowledge of certain facts at issue in the case").

The doctrine is meant to protect CEOs who merely supervise people that have actual firsthand knowledge of the relevant facts in discovery. But Browder is not that. Not only does Mr. Browder plainly have firsthand knowledge of facts relevant to this question—as he was just tweeting about them last week—but he is likely the only person that understands the company's subscriber numbers, geographic reach, and the location of their principal place of business. Mr. Browder tweeted that his company "measure[s] the business of DoNotPay on a daily basis," including tracking the "Net new subscriptions," "Subscriber retention," and "Cash flow." Joshua Browder (@jbrowder1), TWITTER (Mar. 16, 2021 6:25 PM),

https://twitter.com/jbrowder1/status/1371965822948708352?. As CEO, Mr. Browder oversees all of six other employees, and appears to be the only employee overseeing DoNotPay's operations rather than its product.[13] Indeed, the company's internet bill in San Francisco was going directly to Mr. Browder's e-mail address. Proffer Emails at 10-11. Mr. Browder is the only one who can explain whether DoNotPay's "nerve center" is based on wherever he happens to be living, and explain the contradictions between his public announcements and DoNotPay's statements to Plaintiff. To that point, in a case filed in New York seeking discovery from DoNotPay, Mr. Browder personally submitted a declaration attesting to a number of jurisdictional facts. Browder Decl. Because Mr. Browder has exclusive "firsthand knowledge" of information relevant to jurisdictional discovery, the apex deponent doctrine does not apply, and the deposition would not require significant preparation for Mr. Browder. *Affinity Labs*, 2011 WL 1753982, at *15.

Despite Mr. Browder's personal and seemingly exclusive knowledge of the relevant facts, Plaintiff does not uniquely insist on a deposition of Mr. Browder. As discussed above, Plaintiff has maintained an open line of communication—though it has not yielded much—before and after filing the Motion. Plaintiff has been clear for some time that there is no particular need for Mr. Browder to be the deponent, but that it is doubtful anyone else at DoNotPay personally has this same knowledge. Plaintiff has offered DoNotPay the option of a 30(b)(6) deposition rather than a deposition of Mr. Browder, though DoNotPay has not yet answered that offer. Proffer Emails at 16-17. A 30(b)(6) deposition would likely require that DoNotPay provide its chosen representative with information Mr. Browder already knows, and would be less efficient than a straightforward and brief deposition of Mr. Browder himself. Regardless, it would be DoNotPay's obligation in that scenario to ensure that the deponent had the requisite knowledge.

---

[13] Four are engineers or product managers, one is Head of Engineering, and another is Vice President of Product. Mikhail Khayretdinov, LINKEDIN, https://www.linkedin.com/in/mkhv (last accessed May 8, 2023); Tai Nguyen, LINKEDIN, https://www.linkedin.com/in/ntai9296 (last accessed May 8, 2023); Brandon P., Linkedin.com, https://www.linkedin.com/in/bpcolorado (last accessed May 8, 2023); Abraham A., LINKEDIN, https://www.linkedin.com/in/abrahamapellanes; Sou Min Shi, LINKEDIN, https://www.linkedin.com/in/sou-min-shin-b924041aa (last accessed May 8, 2023). Only Mr. Browder and Vice President of Product Andrew Kim have no location listed. Joshua Browder, LINKEDIN, https://www.linkedin.com/in/joshua-browder-b0b573116 (last accessed May 8, 2023); Andrew Kim, LINKEDIN, https://www.linkedin.com/in/awonkim (last accessed May 8, 2023).

## CONCLUSION

This Court should grant Plaintiff leave to conduct limited jurisdictional discovery.

Respectfully submitted,

**JONATHAN FARIDIAN**, individually and on behalf of all others similarly situated,

Dated: May 8, 2023

By: /s/ J. Eli Wade-Scott
    One of Plaintiff's Attorneys

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Jay Edelson (*pro hac vice*)
jedelson@edelson.com
J. Eli Wade-Scott (*pro hac vice*)
ewadescott@edelson.com
Emily Penkowski (*pro hac vice*)
epenkowski@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378