DALE BISH, State Bar No. 235390
ALLIE M. FELLOWS, State Bar No. 346701
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (866) 974-7329
Email: dbish@wsgr.com
afellows@wsgr.com

ELI B. RICHLIN, NY State Bar No. 4861357 (admitted *pro hac vice*)
PAUL C. GROSS, NY State Bar No. 5615687 (admitted *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: erichlin@wsgr.com
pgross@wsgr.com

Attorneys for Defendant
DoNotPay, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JONATHAN FARIDIAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DONOTPAY, INC., a Delaware corporation,<br><br>Defendant. | CASE NO.: 3:23-cv-01692-JD<br><br>**DEFENDANT DONOTPAY, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Date: July 27, 2023<br>Time: 10:00 a.m.<br>Judge: Hon. James Donato<br><br>Date Action Filed: March 3, 2023<br>Date of Removal: April 7, 2023 |

In its opening motion, Defendant DoNotPay, Inc. ("DNP") demonstrated that Plaintiff, like every DNP user during the relevant time period, agreed to the company's Terms of Service that included a binding arbitration agreement. In opposing the motion, Plaintiff does not—because he cannot—dispute that he agreed to the Terms, that he did not see the conspicuous notice, or that he tried to opt-out. Instead, the Opposition raises a series of red-herring arguments that do not change the fundamental, and undisputed, fact that Plaintiff agreed to arbitrate any claims against DNP.

As a threshold argument, Plaintiff says DNP's Sign-Up Screens were somehow insufficient to be enforced. Although users often have their own beliefs about how websites and apps should look, the Opposition does not identify a single decision from any court in which Sign-Up Screens resembling DNP's were deemed insufficient. In contrast, DNP cited a slate of cases demonstrating that DNP's Sign-Up Screens meet or exceed the applicable guidance regarding the type of notice that is sufficient. Plaintiff fails to meaningfully distinguish any of these decisions, or otherwise demonstrate that DNP's screens provide inadequate notice of the Terms and Conditions.

Plaintiff's remaining arguments have no bearing on the narrow question as to whether Plaintiff agreed to arbitrate disputes with DNP.[1] First, Plaintiff argues that public statements by DNP's CEO, which were critical of arbitration, somehow void the parties' express agreement. Not surprisingly, Plaintiff cites no authority to support this sweeping proposition. Second, Plaintiff argues that *other* users had their opt-out requests returned as undeliverable. Again, Plaintiff does not suggest he tried to opt-out and he cites no caselaw suggesting that some other customers' efforts to opt-out of arbitration (which is entirely optional under California law) somehow impacts his agreement with DNP. Finally, Plaintiff criticizes DNP's declarant for referencing the Wayback Machine (which is common practice in cases like this) and who was

---

[1] The Opposition does not contest that, if an arbitration agreement exists, the present dispute falls within the scope of that agreement. Accordingly, Plaintiff has conceded that point. *See Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013) (failure of opposition to contest an argument raised in a moving brief amounts to a concession on that argument) (collecting cases).

DEF.'S REPLY ISO MOT. TO COMPEL ARB.     -1-
CASE NO.: 3:23-cv-01692-JD

1  not sure whether it was him or another engineer who initially prepared screenshots of DNP's

2  Sign-Up Screens.  But that criticism is not a basis to cast aside the parties' agreement, which

3  Plaintiff does not deny seeing or agreeing to, and is therefore no basis to deny DNP's motion.

4        Plaintiff's irrelevant arguments aside, DNP has shown that (i) its sign-up process

5  provided conspicuous notice of the Terms and Conditions and (ii) Plaintiff manifested assent to

6  those Terms, including the arbitration clause, each time he created a DNP account.  The motion

7  to compel arbitration should be granted.

8  **I.  DNP has Submitted Competent Evidence of the Appearance of its Sign-Up Screens**

9        The gravamen of Plaintiff's opposition is that that DNP "failed to provide competent

10  evidence" in support of its motion. Opp. at 8-9.  Plaintiff is wrong.  DNP is not speculating, or

11  asking the Court to speculate, that Plaintiff might have agreed to its Terms.  Rather, DNP's Vice

12  President of Product, Andrew Kim, provided a sworn declaration providing images of the

13  relevant portions of the Sign-Up Screens that Plaintiff encountered when creating his *four*

14  separate DNP accounts. *See* ECF No. 30-1. Mr. Kim then sat for a deposition and repeatedly

15  confirmed that Plaintiff would necessarily have seen the screens and agreed to DNP's Terms.

16  Importantly, Plaintiff did not submit a declaration, or make any argument, suggesting that he did

17  not encounter the sign-up screen or that he did not agree to DNP's Terms.

18        Rather than offering competing proof, Plaintiff devotes most of his opposition to

19  criticizing Mr. Kim.  But nothing in Mr. Kim's deposition changed any of the fundamental points

20  that Plaintiff agreed to DNP's Terms. *E.g.*, ECF No. 42-4 at 18:8-12 ("Q:  So you said that

21  Exhibit A and Exhibit B [depicting Sign-Up Screens I and II] were the login screens that a user

22  would have seen when logging in when plaintiff created his accounts, is that fair? A: Yes.").[2]

---

25  [2] Plaintiff's assertion that Mr. Kim "admitted from the get-go that he lacked personal knowledge of what Sign-Up Screen II looked like" is absolutely false. Opp. at 8.  Mr. Kim
26  testified that he, working with another engineer, used DNP's records to recreate Sign-Up Screen II as it would have existed at the time Plaintiff created his accounts, and that this is the basis of
27  his personal knowledge.  *See* ECF No. 42-4 at 17:13-17 ("me and another engineer went back to the version in the code base that was relevant at the time Faridian signed up and redeployed that
28  version of the code base locally and took a screenshot of it").

1    And while Mr. Kim testified that he worked with another DNP engineer to prepare the
2    screenshots, he confirmed that he was personally involved in such preparation as well. *Id.* at
3    ECF No. 42-4 at 17:13-17.  Of course, Plaintiff cites no authority to suggest that a declarant may
4    not work with others at his company to prepare evidence derived from business records.  Nor
5    does Plaintiff cite any authority for the proposition that a declarant must know what browser or
6    device a user used to view the Sign-Up Screens in order to present admissible evidence.[3]

7    If anything, Plaintiff's inapposite caselaw demonstrates the disparity between the instant
8    case and cases where a declarant's evidence is called into question.  In *In re Uber Text*
9    *Messaging*, the declarant (i) testified that he had never seen the documents attached to his
10   Declaration until "weeks after" the Declaration was filed and (ii) was unable to explain the
11   meaning of those exhibits. *In re Uber Text Messaging*, No. 18-CV-02931-HSG, 2019 WL
12   2509337, at *6 (N.D. Cal. June 18, 2019).  Mr. Kim, by contrast, worked with another engineer
13   to personally prepare the Exhibits to his declaration using DNP's business records. And in
14   *Eventbrite*, "Judge Orrick declined to compel arbitration in part because the screenshots
15   Eventbrite produced were not dated to the period when the plaintiffs were using Eventbrite."
16   *Britt v. ContextLogic, Inc.*, No. 20-CV-04333-WHA, 2021 WL 1338553, at *5 (N.D. Cal. Apr. 9,
17   2021).  Here, Plaintiff cannot suggest that the Sign-Up Screens are misdated, or that Faridian saw
18   some other screen when he created his account.

19   **II.   DNP's Sign-Up Screens Provide Conspicuous Notice of the Terms**

20   Plaintiff next argues that DNP's Screens do not provide conspicuous notice of the Terms,
21   including the arbitration clause. Opp. at 11. As explained in its opening brief, DNP's sign-up
22   processes satisfy or exceed the relevant guidance considered by courts in this district.[4]  For

---

[3] In particular, Plaintiff's gripe that DNP did not submit evidence of what its screens look like on a mobile device is misguided. *See* Opp. at 4.  Plaintiff would have encountered the same screen – as it is found on DNP's website – on both a mobile device or a web browser.  Plaintiff certainly does not argue otherwise, nor does he cite any authority for the proposition that a defendant seeking to enforce its terms of service must present evidence of the notice of the terms as it might appear on every possible device.

[4] Indeed, even in the short time since DNP's opening brief was filed, yet another decision in this district found that a screen with *less conspicuous* notice that DNP's was still sufficient to provide notice of assent to Terms and Conditions. *See Karim v. Best Buy Co.*, No. 22-CV-

(continued...)

DEF.'S REPLY ISO MOT. TO COMPEL ARB.           -3-
CASE NO.: 3:23-cv-01692-JD

example, the screens are not cluttered or confusing. Rather, they contain only one field for inputting information and a single hyperlink to the Terms. This alone distinguishes the examples Plaintiff cites in his Appendix (discussed *infra* at 5). Moreover, the hyperlinks in both screens are prominently emphasized: Sign-Up Screen I features an underlined hyperlink (found to be sufficient in *Snow v. Nectar Brand, LLC.*, No. 22- cv-07912-MCS-MRW, 2023 WL 2558544, at *2-3 (C.D. Cal. Mar. 2, 2023); *Pizarro v. QuinStreet, Inc.*, No. 22-cv-02803-MMC, 2022 WL 3357838, at *1 (N.D. Cal. Aug. 15, 2022); and *In re Ring LLC Priv. Litig.*, No. 19-CV-10899-MWF, 2021 WL 2621197, at *9 (C.D. Cal. June 24, 2021)) and Sign-Up Screen II features a hyperlink that is bolded, underlined *and* in bright magenta.

      Rather than candidly acknowledge the clarity and conspicuousness of DNP's notice, Plaintiff mischaracterizes them.[5] According to Plaintiff, "the hyperlink [on Sign-Up Screen II] is disguised by the other bright pink text on the page that is *not* a hyperlink." Opp. at 13 (emphasis in original). But that's not true. The only other pink text on the screen is DNP's name at the very top, and the statement "[o]ver 250,000 cases successfully resolved" at the very bottom – neither of which is underlined. ECF No. 30-1 at Ex. B. The hyperlink, by comparison, is placed right next to the large pink button marked "Continue" and is underlined to indicate a hyperlink. No reasonable user is at risk of confusing the obvious hyperlink below the Continue button with the text at the very bottom and very top of the screen. Plaintiff also cites a case – which he asserts somehow supports his position – holding that a bright pink hyperlink is sufficiently conspicuous "where warning text 'contrasts clearly' with a 'white background' on an uncluttered webpage." Opp. at 13 (citing *Hooper v. Jerry Ins. Agency, LLC*, No. 22-CV-04232-JST, 2023 WL 3992130, at *4 (N.D. Cal. June 1, 2023). That is precisely right. The court's description of

---

04909-JST, 2023 WL 3801909, at *3 (N.D. Cal. June 2, 2023) (finding reasonably conspicuous notice where "the hyperlinks are in blue with no other emphasis" such as underlining).

    [5] Plaintiff's criticism of the excerpted screenshots that DNP provided in its opening brief (Opp. at 4) is especially misleading. DNP forthrightly provided true and correct copies of the relevant portion of the sign-up screens, and the larger versions that Plaintiff provides simply *confirm* that the screens are reasonably conspicuous in any event.

1  what an adequately conspicuous notice *would be* is exactly what DNP followed in Sign-Up
2  Screen II, i.e., a bright pink hyperlink and warning text contrasting against a white background.
3        Each of the cases cited in Plaintiff's Appendix B – allegedly collecting "Analogous Sign-
4  up Screens that give Users Insufficient Notice of Terms" – is readily distinguishable.  In *Berman*
5  and *Sellers* (shown at pages 3-5 of the Appendices attached to the Opposition), the distinction is
6  obvious: those screens each contain numerous cluttered fields and hyperlinks, making it difficult
7  for a user to identify the hyperlink to the relevant terms (or even notice that such hyperlink is
8  present).  DNP's Sign-Up Screens, on the other hand, each feature only one field for text and one
9  hyperlink, much simpler and cleaner than the screens in *Berman* and *Sellers*.  And in *Applebaum*
10 *v. Lyft* (page 5 of Appendices), an older case from the Southern District of New York, the Court
11 noted that the hyperlink included "no familiar indicia to inform consumers that there was in fact
12 a hyperlink that should be clicked and that a contract should be reviewed, such as words to that
13 effect, underlining, bolding, capitalization, italicization, or large font."  *Applebaum v. Lyft, Inc.*,
14 263 F. Supp. 3d 454, 467 (S.D.N.Y. 2017).  Here, DNP's Sign-Up Screen I includes an
15 underlined hyperlink whereas Sign-Up Screen II is underlined, bolded, and in a bright colored
16 font.
17       The *Colgate v. Juul Labs* screens (page 6 of the Appendices) have likewise been
18 distinguished from screens resembling DNP's by other courts in this district, including Judge
19 Orrick (who authored the *Colgate* decision in the first place).  *See Brown v. Madison Reed, Inc.*,
20 No. 21-CV-01233-WHO, 2021 WL 3861457, at *5 (N.D. Cal. Aug. 30, 2021) (Orrick, J.)
21 (noting that the hyperlink in *Colgate* "was not presented in 'a different color, underlined,
22 italicized, or in any way visually distinct from the surrounding text'"); *Peter v. DoorDash, Inc.*,
23 445 F. Supp. 3d 580, 586–87 (N.D. Cal. 2020) ("*Colgate* is distinguishable . . . the *Colgate* sign-
24 in page included another hyperlink that was bolded, underlined, and in a larger font.  The court
25 worried that users would not know that the second link was in fact a link given the greater
26 emphasis attending the earlier-appearing link").  The factors identified in *Madison Reed* and
27 *DoorDash* cases distinguish DNP's Sign-Up Screens as well.  DNP's Screens, again, each have
28 only one hyperlink and (at minimum) underlines that hyperlink for emphasis.

And finally, the screens from *Cullinane v. Uber Techs., Inc.*, present the hyperlink to the terms in a box (and not underlined, as consumers have come to expect). Moreover, at least one court in this district has found that the *Cullinane* decision, from the First Circuit, is one that "courts within the Ninth Circuit have not followed." *See Regan v. Pinger, Inc.*, No. 20-CV-02221-LHK, 2021 WL 706465, at *7 (N.D. Cal. Feb. 23, 2021).

In sum, DNP's notice of its Terms of Service is clear, conspicuous, and complies with all of the applicable guidance in this Circuit. Plaintiff cannot show otherwise.

### III.  Plaintiff Clearly Manifested Assent to the Terms

Plaintiff next argues that that the DNP's sign-up process is insufficient because the assent to terms appears on screens at "the very first step to any of signing up for an account." Opp. at 14. According to Plaintiff, a reasonable user would not expect to be asked to manifest assent to Terms and Conditions "before they create a password, fill out a profile, or purchase a subscription." *Id.* That is simply not the law. There is no law saying that notice and aset to terms must occur later in the registration process. Indeed, courts have criticized companies for "burying" assent at the end of a sign-up process. Here, if a customer wants to access DNP's services, they must agree at the outset to its Terms. If anything, that heightens the conspicuousness of DNP's Terms. It certainly does not preclude enforcement as a matter of law. *See Spacil v. Home Away, Inc.*, No. 19-CV-00983-GMN-EJY, 2020 WL 184985, at *4 (D. Nev. Jan. 13, 2020) ("Plaintiff's click on the . . . button **on the first page** of the booking request process 'suffice[d] to establish that Plaintiff[ ] assented to the arbitration provision' that is part of HomeAway's terms.") (emphasis added) (internal quotation marks and citations omitted).

In any event, it is undisputed that Plaintiff *did* "sign-up" for DNP's services, including by creating passwords and purchasing four separate subscriptions – his Complaint concerns his alleged dissatisfaction with such services after signing up. Mot. at 6-7. Accordingly, even if Plaintiff was correct that proceeding through the entire sign-up process is necessary to manifest assent to the Terms and Conditions (he is not), Plaintiff *did* complete the sign-up process and thereby manifested assent even according to his own manufactured standard.

### IV. The Court Should Disregard Plaintiff's Distracting and Irrelevant Arguments

#### A. *DNP's CEO's Alleged Statements Regarding Arbitration are Irrelevant*

As part of an ongoing campaign against DNP's CEO, Plaintiff identifies certain public statements made by DNP's CEO in which he criticized arbitration clauses and argues that this "gives users all the less reason to ferret out a link to the terms." Opp. at 9-10.  This argument is baseless for several reasons.  First, there is no allegation that Plaintiff Faridian saw, heard, or knew about these statements (some of which were made several years ago) at the time he created his accounts and therefore no reason to conclude that he (or any individual user) would have been influenced by such statements.  Second, and more importantly, Plaintiff does not cite any authority to suggest that an individual's beliefs or public statements on a broad topic have any bearing on the formation of a particular contract.  Finally, Plaintiff ignores that—although not required to do so—DNP gives customers the right to opt-out of arbitration.  In any event, public statements by individuals associated with a company—even if it is the CEO—is not a basis to invalidate an otherwise binding contract.

#### B. *Plaintiff's Skepticism about the Opt-Out Provision is Irrelevant*

Plaintiff lastly argues that DNP's opt-out process is insufficient because one customer (who tried to sue DNP in New York) allegedly had her opt-out request returned unopened, years after Plaintiff first signed up for his accounts. Opp. at 6.  As a threshold matter, and as noted above, there is simply no requirement for DNP to offer an opt-out provision in this context.  But even if Plaintiff is correct—and DNP (like many other companies since 2020) had issues tracking physical mail—that is irrelevant to this motion where the Plaintiff himself does not allege he unsuccessfully tried to opt-out of arbitration.

Respectfully submitted,

Dated: June 30, 2023

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ *Dale Bish*
DALE BISH, State Bar No. 235390
ALLIE M. FELLOWS, State Bar No. 346701

DEF.'S REPLY ISO MOT. TO COMPEL ARB.        -7-
CASE NO.: 3:23-cv-01692-JD

650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (866) 974-7329
Email: dbish@wsgr.com
Email: afellows@wsgr.com

ELI B. RICHLIN, NY State Bar No. 4861357
(admitted *pro hac vice*)
PAUL C. GROSS, NY State Bar No. 5615687
(admitted *pro hac vice*)
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: erichlin@wsgr.com
Email: pgross@wsgr.com

Attorneys for Defendant
DoNotPay, Inc.