# Exhibit A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

**Case No.  2:23-cv-02968 MWF (RAOx)**          **Date:  July 20, 2023**
Title:  Sangshin Lee v. DoNotPay, Inc.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

|  |  |
|---|---|
| Deputy Clerk: | Court Reporter: |
| Rita Sanchez | Not Reported |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None Present | None Present |

**Proceedings (In Chambers):**          ORDER GRANTING MOTION TO COMPEL
ARBITRATION [13]

Before the Court is Defendant DoNotPay, Inc.'s Motion to Compel Arbitration (the "Motion"), filed on June 26, 2023.  (Docket No. 11).  Plaintiff Sangshin Lee filed an Opposition on July 3, 2023.  (Docket No. 13).  Defendants filed a Reply on July 10, 2023.  (Docket No. 15).

The Motion was noticed to be heard on **July 24**, **2023**.  The Court read and considered the papers on the Motion and deemed the matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); Local Rule 7-15.  The hearing was therefore **VACATED** and removed from the Court's calendar.

The Motion is **GRANTED** and the action is **STAYED** pending the arbitration proceedings.

## I.  BACKGROUND

DoNotPay, Inc. ("DNP") is a privately held corporation that uses technology to help customers accomplish certain administrative tasks, such as demanding owed refunds and contesting bank and ATM fees.  (Motion at 4; Declaration of Andrew Kim ("Kim Decl.") (Docket No. 11-1) ¶¶ 4–5).  DNP operates a subscription model where customers pay a monthly fee to receive access to DNP's services.  (Kim Decl. ¶ 6).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  2:23-cv-02968 MWF (RAOx)**          **Date:  July 20, 2023**
Title:  Sangshin Lee v. DoNotPay, Inc.

In order to create an account with DNP, a user must consent to the Terms and Conditions of DNP by indicating such consent on one of DNP's sign-up screens.  (*Id* ¶ 9).  Plaintiff was required to view the below sign-screen:



(Kim Decl., Ex. B; Opposition at 7).  The Terms and Conditions contain a mandatory arbitration clause which states:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No. 2:23-cv-02968 MWF (RAOx)**          **Date: July 20, 2023**
Title:  Sangshin Lee v. DoNotPay, Inc.

> Any dispute (any claim related to the services or terms of use or any controversy related to DoNotPay or arising out of our relationship) shall be resolved through binding individual arbitration. No dispute shall be arbitrated or litigated in any purported class or representative proceeding. Furthermore, you and DoNotPay Inc. each agree to waive the right to participate in a class action, the right to a trial by jury, and the right to litigate on a class-wide basis. The Federal Arbitration Act governs the interpretation and enforcement of this arbitration provision, which shall survive termination or expiration of these Terms.
>
> You can opt out of arbitration if you provide written notice within 30 days following the date you first agree to these Terms and send written notice by registered mail clearly stating your desire to do so to the following address: 164 Townsend Street, Unit #2, San Francisco, CA 94107. We will reimburse all fees or costs for disputes or claims less than $10,000 unless the Arbitrator finds your claim(s) to be frivolous.

(*Id.* ¶ 7; Ex. A at 7).

Plaintiff arrived at the web page displaying DNP's Sign-Up Screen on June 3, 2021, at 1:55 p.m. (PDT).  (*Id.* ¶ 14).  Plaintiff entered his email address in the space for "Email or phone number," and then proceeded to click the "Continue" button, creating his account.  (*Id.* ¶ 15).  Plaintiff did not opt out of this arbitration provision within the 30 days allotted in DNP's Terms and Conditions.  (*Id.*).

Plaintiff states that he was not aware of, nor recalls seeing DNP's Terms of Service and Privacy Policy or any arbitration provision when he purchased Defendant's services.  (Declaration of Sangshin Lee ("Lee Decl.")(Docket No. 13-1) ¶¶ 3, 7).  Plaintiff states that he did not sign any arbitration agreement with DNP or otherwise agree to one.  (*Id.* ¶ 5).

Over the next several years, Plaintiff requested DNP to perform 307 tasks on his behalf.  (Kim Decl. ¶ 16).  Plaintiff viewed the web page on March 16, 2023,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  2:23-cv-02968 MWF (RAOx)**           **Date:  July 20, 2023**
Title:  Sangshin Lee v. DoNotPay, Inc.

containing DNP's Terms and Conditions.  (*Id.* ¶ 17).  Plaintiff states that he spent less than 30 seconds on this page and did not read the terms.  (Lee Decl. ¶ 7).

On April 19, 2023, Plaintiff initiated this action alleging that DNP engaged in a "fraudulent payment scheme" that involved: (1) automatically charging consumers $36 on a recurring basis without their knowledge or affirmative consent; (2) failing to clearly and conspicuously present its auto-renewal terms to consumers and not sending any form of communication, such as an email, to confirm these terms; and, (3) neglecting to provide a clear and simple cancellation method on its website. (Complaint (Docket No. 1) ¶ 2).

DNP now moves to compel arbitration, arguing that Plaintiff's claims are subject to mandatory arbitration pursuant to the agreement that Plaintiff agreed to in order to access DNP's services.  (Motion at 1).

## II.   **LEGAL STANDARD**

The Federal Arbitration Act ("FAA") requires the district courts to compel arbitration on all claims subject to arbitration agreements.  *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (citing 9 U.S.C. §§ 3, 4).  The FAA creates a general presumption in favor of arbitration and requires the enforcement of a written agreement to arbitrate.  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24–25 (1991).  A court must interpret arbitration provisions liberally, resolving doubts in favor of arbitration.  *Moses H. Cone Mem'l Hosp.*, 460 U.S. 1, 24-25 (1983).  The burden is on the party opposing arbitration to proffer evidence demonstrating that such an agreement is invalid.  *See, e.g.*, *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000); *see also AT&T Tech., Inc. v. Communication Workers of Am.*, 475 U.S. 643, 650 (1986), *quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582- 83 (1960) ("[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  2:23-cv-02968 MWF (RAOx)          Date:  July 20, 2023
Title:  Sangshin Lee v. DoNotPay, Inc.

susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.")

Under the FAA, a party moving to compel arbitration must show two things: "(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue."  *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

The party seeking arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence.  *Norcia v. Samsung Telecoms. Am.*, LLC, 845 F.3d 1279, 1283 (9th Cir. 2017).  Because the FAA favors arbitration, the burden is on the plaintiff to prove that the arbitration agreement is, in fact, not enforceable. *See Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) ("[T]hose parties challenging the enforceability of an arbitration agreement bear the burden of proving that the provision is unenforceable.").

"[A]rbitration is fundamentally a matter of contract."  *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011).  "[G]ateway issues of arbitrability presumptively are reserved for the court."  *Id.* at 987.  Even though judicial resolution, not arbitration, is the presumptive forum for disputes about arbitrability, "parties may agree to delegate them to the arbitrator."  *Id.*  "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."  *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995).  "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019).

## III.  **DISCUSSION**

### A.  **The Existence of An Enforceable Agreement to Arbitrate**

An enforceable agreement to arbitrate may only be found where "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a

---

**CIVIL MINUTES—GENERAL**                                         **5**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  **2:23-cv-02968 MWF (RAOx)**          Date:  **July 20, 2023**
Title:  Sangshin Lee v. DoNotPay, Inc.

box, that unambiguously manifests his or her assent to those terms." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023).

The Ninth Circuit has clarified the standards under which courts evaluate "reasonable notice" in the context of online contract formation.  *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849 (9th Cir. 2022).  The Ninth Circuit explained that "[w]ebsite users are entitled to assume that important provisions – such as those that disclose the existence of proposed contractual terms – will be prominently displayed [.]"  *Id.* at 857.

The Ninth Circuit set forth three general principles to aid web designers in confirming that their respective "sign-up screens" sufficiently provide notice of assent to terms and conditions.  First, "a notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it."  *Id.* at 856.  Specifically, the font and formatting of that notice must not be "so small that it is barely legible to the naked eye."  *Id.* at 856–57.  Second, "while it is permissible to disclose terms and conditions through a hyperlink, the fact that a hyperlink is present must be readily apparent . . . [c]onsumers cannot be required to hover their mouse over otherwise plain-looking text or aimlessly click on words on a page in an effort to 'ferret out hyperlinks.'"  *Id.* at 857.  Third, "the notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement."  *Id.* at 858.

### 1.  Inquiry Notice

DNP argues that the notice of its Terms and Conditions on its Sign-Up Screen meet or exceed the notice requirements set out by the Ninth Circuit.  (Motion at 9–13).

Plaintiff argues that DNP's Sign-Up Screen lacks sufficient and conspicuous notice to bind Plaintiff to its terms and the arbitration provision therein.  (Opposition at 6–9).

Plaintiff contends that DNP intentionally designed its sign-up page to feature attention-diverting elements placed ahead of the Terms and Conditions hyperlink, so as

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  **2:23-cv-02968 MWF (RAOx)**          Date:  **July 20, 2023**
Title:  Sangshin Lee v. DoNotPay, Inc.

to obfuscate the latter.  (*Id.* at 7).  Plaintiff argues that the size of DNP's purported textual notice "is the smallest text on the entire sign-up page, which courts consider inconspicuous to provide sufficient notice."  (*Id.*); *see Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 481, 289 Cal. Rptr. 3d 1 (2021) (finding notice language "in smaller print than any other print on the page" inconspicuous and inadequate notice); *Berman*, 30 F. 4th at 856–57 (small font is inconspicuous where it is "considerably smaller than the font used in the surrounding website elements . . .").

Plaintiff also asserts that most of the type in which the Terms and Conditions hyperlink is embedded is inconspicuous because it is in small, transparent gray font, which is unnoticeable and eclipsed by other graphics and text on the page.  (Opposition at 9); *see Berman*, 30 F. 4th at 856 (finding the website's disclosure to be "the antithesis of conspicuous" because, among other reasons, it was written in "tiny gray font. . . ."); *Sellers*, 73 Cal. App. 5th at 481 (finding inconspicuous notice in part because text "appears in smaller print than any other print on the page, and in a grey shade. . ."); *Brooks v. IT Works Mktg., Inc*., No. 1:21-cv-01341-DAD (BAK), 2022 WL 2079747, at *6 (E.D. Cal. June 9, 2022) (emphasis added) (finding notice inconspicuous where terms "are only made available through a tiny grey hyperlink").

On review of DNP's sign-up page, the Court determines that the notice of the Terms and Conditions is adequately conspicuous.  The notice of the Terms and Conditions on the Sign-Up Screen is printed in a crisp gray font which contrasts the plain-white background.  (*See* Kim Decl., Ex. B).  The font remains of readable size and the whole screen is visible at once.  It therefore cannot be said that the font is "so small that it is barely legible to the naked eye."  *See Berman*, 856–57.

Further, the hyperlink to the Terms and Conditions within the notice is prominent and emphasized.  The hyperlink is underlined and formatted in bright magenta which is clearly set apart from the surrounding text.  This distinguishes it from the web page in *Sellers*, where the hyperlink to the terms was underlined, "but it [was] not set apart in any other way that may draw attention of the consumer, such as with blue text or capital letters."  *Sellers*, 73 Cal. App. 5th at 480–81.  Contextually, it is also relevant that the plaintiffs in *Sellers* were signing up for a free trial such that "they

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  2:23-cv-02968 MWF (RAOx)                Date:  July 20, 2023
Title:  Sangshin Lee v. DoNotPay, Inc.

also would not likely be scrutinizing the page for small text outside the payment box or at the bottom of the screen linking them to 26 pages of contractual terms." *Id*. at 480. Here, however, the Sign-Up Screen is not providing a free trial but is instead the first stage to procuring an ongoing paid membership.

In *Berman,* the terms and conditions hyperlink was inadequately emphasized, appeared alongside multiple fields requesting information such as zip-code and gender, and did not explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement.  *Berman,* 30 F.4th at 858.  In contrast, here, there is far less risk that a customer would need to "aimlessly click on words" to "ferret out" the hyperlink to DNP's Terms and Conditions because the hyperlink is clearly denoted, as it is underlined and colored bright magenta.  *See id.* at 857.  Additionally, the text around the hyperlink, located immediately below the "Continue" button which users click to sign in or sign up, explicitly notifies users of the legal significance of hitting the continue button as it states that "by signing up or signing in, you are agreeing to DoNotPay's Terms and Conditions."  *See id.* at 858.

The web page in *Brooks v IT Works Mktg., Inc.* is distinguishable because the website there presented *two* agreements, one in a box that the consumer was required to view upon signing up and one "linked at the [] bottom of the webpage." 2022 WL 2079747, at *1.  The *Brooks* court declined to enforce the second agreement.  *Id.* ("defendants argue that by completing the checkout process, plaintiff not only agreed to the It Works! Loyal Customer Agreement Terms & Conditions . . . but she also agreed to the Terms of Use . . . linked at the bottom of each webpage").  Here, DNP's Sign-Up Screen only presents one agreement which is displayed directly below the box where a user seeking to become a DNP subscriber must enter contact information.

Plaintiff further argues that the text "Sign in or Sign up" just above the "Terms and Conditions" diverts attention away from the terms and that the warning language "is easily overlooked due to promotional text and prominent company logos for CNN, Forbes, Business Insider, and others."  (Opposition at 8).  The Court disagrees with this assessment as DNP's Sign-Up Screen only presents one hyperlink that is displayed directly below the box where a user seeking to become a DNP subscriber must enter

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  2:23-cv-02968 MWF (RAOx)          Date:  July 20, 2023
Title:  Sangshin Lee v. DoNotPay, Inc.

contact information.  Here, no reasonable user would confuse the graphics and quotes on other parts of the webpage such that they would not understand that by signing up for a DNP subscription, they are agreeing to the company's terms that are presented in immediate proximity to the "Continue" button.  *See Grice v. Uber Techs., Inc.*, No. 18-cv-2995, 2020 WL 497487, at *10 (C.D. Cal. Jan. 7, 2020) (courts "need not presume that [a] reasonably prudent [] user has never before encountered an app or entered into a contract [online]" (internal quotation marks and citation omitted)).

Plaintiff's citations to support his diverted attention argument involve web pages that included more significant issues in their presentation and formatting.  For instance, Plaintiff relies on *Starke v. SquareTrade*, where the Second Circuit found the interface to be "cluttered with diverse text, displayed in multiple colors, sizes and fonts, and [featured] various buttons and promotional advertisements that [distracted] the reader from the relevant hyperlink." 913 F.3d 279, 293 (2d Cir. 2019)  Yet DNP's web page is less cluttered than that the relevant email in *Starke*, copied below, which included a series of pertinent coverage plan information and did not direct Starke to the terms and conditions.



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  2:23-cv-02968 MWF (RAOx)                Date:  July 20, 2023
Title:  Sangshin Lee v. DoNotPay, Inc.

*Id.* at 285.  Moreover, *Starke* is additionally distinguishable from the case at hand because in *Starke* "[t]he first screen [plaintiff] encountered during the course of the transaction" failed to put the plaintiff on notice that the relevant terms and conditions would come in the form of a hyperlink.  *Id.* at 292.  Instead, the first web page Starke encountered notified him that he would receive something called a 'Service Contract' via email, which was confusingly followed up with an email from a different party indicating that his "Contract" was enclosed.  *See id.* at 292–93.  Here, DNP's web page adequately puts a reasonably prudent user that the Terms and Conditions are in the emphasized hyperlink.

Plaintiff also cites to *Keebaugh v. Warner Bros. Ent. Inc.,* where the court emphasized the importance of examining "whether other elements on the screen clutter or otherwise obscure the textual notice" when determining the conspicuousness of the notice.  *Keebaugh v. Warner Bros. Ent. Inc.*, No. 2:22-cv-01272-MEMF (AGRx), 2022 WL 7610032, at *4 (C.D. Cal. Oct. 13, 2022).  Yet this case is also distinguishable because the sign-up screen in *Keebaugh* involved a free trial, and the court devoted several paragraphs to explaining why California law distinguishes free trials from a continuing relationship.  *Id.* ("the Court finds that the facts here do not present the type of 'situation in which [t]he registration process clearly contemplated some sort of continuing relationship . . . that would require some terms and conditions'") (quoting *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 480 (2021)).

Instead, the Court determines that DNP's Sign-Up Screen is more analogous to the sign-in screens in cases cited by DNP which were found to provide sufficiently conspicuous notice of assent to terms.  (Motion at 10–12).  The following screens similarly emphasize a terms and conditions hyperlink with contrasting color font and underlining of text placed in proximity to the button manifesting assent to terms and conditions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **2:23-cv-02968 MWF (RAOx)**            **Date:  July 20, 2023**
Title:  Sangshin Lee v. DoNotPay, Inc.



*Amanda Snow et al. v. Nectar Brand, LLC.*, No. CV 22-7912-MCS (MRWx), 2023 WL
2558544 (C.D. Cal. Mar. 2, 2023).



*Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890, 896 (C.D. Cal. 2020).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  2:23-cv-02968 MWF (RAOx)**                **Date:  July 20, 2023**
Title:  Sangshin Lee v. DoNotPay, Inc.



*Rainey v. A Place for Rover, Inc.*, No. CV 22-403-RGK (Ex), 2022 WL 16942849
(C.D. Cal. July 18, 2022).



*In re Ring LLC Priv. Litig.*, No. CV 19-10899-MWF (RAOx), 2021 WL 2621197, at
*9 (C.D. Cal. June 24, 2021), *appeal dismissed*, No. 21-55872, 2022 WL 3339845 (9th
Cir. Aug. 3, 2022).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  2:23-cv-02968 MWF (RAOx)**              **Date:  July 20, 2023**
Title:  Sangshin Lee v. DoNotPay, Inc.



*Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020).

Accordingly, the Court determines that DNP's Sign-Up page provides sufficiently conspicuous notice of DNP's Terms and Conditions.

### 2.  Assent to DNP's Terms

DNP argues that Plaintiff assented to the terms of DNP's Terms and Conditions by clicking the large pink button marked "Continue" on DNP's Sign-Up Screen. (Reply at 6).

Plaintiff argues that he did not agree to DNP's terms and that the mere act of clicking the "Continue" button is not evidence of assent.  (Opposition at 10–13). Plaintiff contends that the mismatch in language between "Continue" and "By signing up or signing in, you are agreeing to DoNotPay's Terms and Conditions" invalidates any assent to the Terms.  (*Id.* at 10–12).

"[A]rbitration is a matter of contract," *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citations omitted), and courts apply "general state-law principles of contract interpretation" to determine whether an agreement to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  **2:23-cv-02968 MWF (RAOx)**                    Date:  **July 20, 2023**
Title:  Sangshin Lee v. DoNotPay, Inc.

arbitrate exists, *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (quotation omitted).  An arbitration agreement need only be in writing, and no signature by either party is necessary.  *See* FAA, 9 U.S.C. § 2; *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1439 (9th Cir. 1994).  Under California law, "[m]utual assent, or consent, of the parties is essential to the existence of a contract."  *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 943 (2022) (quotation omitted).

"A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement."  *Oberstein,* 60 F.4th at 515 (quoting *Berman*, 30 F.4th at 857).  In *Meyer v. Uber Techs*, the Second Circuit, applying California and New York law, explained that despite any technical mismatch in language, "the physical proximity of the notice to the register button and the placement of the language in the registration flow make clear to the user that the linked terms pertain to the action the user is about to take."  868 F.3d 66, 80 (2d Cir. 2017).  In *Meyer*, the text on the screen "not only included a hyperlink to the Terms of Service, but expressly warned the user that by creating an Uber account, the user was agreeing to be bound by the linked terms."  *Meyer* 868 F.3d at 80.

District courts in California have followed the reasoning *Meyer* to determine that clicking "continue" buttons unambiguously manifested assent to terms and conditions despite a similar language mismatch from the proximate disclaimer.  *See Zaimi v. Neiman Marcus Grp*., LLC, No. 22-cv-02972-AB (SKx), 2022 WL 19569536, at *3 (C.D. Cal. Aug. 31, 2022) (finding mutual assent where the disclaimer reads "[b]y continuing" and the button reads "Sign in & Checkout"); *Rainey v. A Place for Rover, Inc*., 2022 WL 16942849, at *1 (finding mutual assent where the disclaimer reads "By signing in or signing up" and one button reads "Continue with Google"); *Regan v. Pinger, Inc*., No. 20-cv-02221-LHK, 2021 WL 706465, at *8 (N.D. Cal. Feb. 23, 2021) (citing *Meyer* and finding mutual assent where the disclaimer reads "By registering" and the button reads "Create Account"); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 586 (N.D. Cal. 2020) (citing *Meyer* and finding mutual assent where the disclaimer reads "by creating an Uber account . . ." and then button reads "Register").  The Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  2:23-cv-02968 MWF (RAOx)**                    **Date:  July 20, 2023**
Title:  Sangshin Lee v. DoNotPay, Inc.

agrees with these courts and the reasoning in *Meyer* in concluding that the language mismatch here did not undermine assent.

The cases cited by Plaintiff, where courts determined a party failed to establish assent, are distinguishable.  For instance, in *McKee v. Audible, Inc*., the district court acknowledged that the mismatch in language between "sign in" and "continue" was not "determinative" and focused instead on the fact that the contract disclosure could be "obscured from view."  *McKee v. Audible, Inc*., No. 17-cv-1941, 2017 WL 4685039, at *9 (C.D. Cal. July 17, 2017).  Also, in *Berman*, the web page simply presented a continue button with a statement below reading "I understand and agree to the Terms & Conditions," without reference to the impact of any particular action.  *Berman*, 30 F.4th at 858.  The Ninth Circuit therefore determined that the design of the web page in *Berman* did not "explicitly advise[] that the clicking will constitute assent to the terms and conditions of an agreement."  *See Berman* 30 F.4th at 857.  Here, in contrast, DNP's screen makes the assent-manifesting action clear—signing up or signing in— and clicking the continue button is the way to complete that action.

Plaintiff entered his email address in the space for "Email or phone number" and then proceeded to click the "Continue button" to create his account.  (Kim Decl. ¶ 15). The "Continue" button was located directly above reasonably conspicuous and explicit language that put users on notice that continuing would manifest assent to DNP's terms and conditions.

Accordingly, the Court determines that Plaintiff assented to DNP's terms and conditions.

### B.    The Enforceability of the Arbitration Provision

Plaintiff next argues that DNP's arbitration clause is unenforceable because it (1) precludes Plaintiff from pursuing public injunctive relief and (2) is procedurally and substantively unconscionable.  (Opposition at 16).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  2:23-cv-02968 MWF (RAOx)                    Date:  July 20, 2023
Title:  Sangshin Lee v. DoNotPay, Inc.

### 1.  The McGill Rule

The California Supreme Court held in *McGill v. Citibank* that "a predispute arbitration agreement that waives the right to seek [public injunctive relief] . . . in any forum . . . is contrary to California public policy and is thus unenforceable under California law."  2 Cal. 5th 945, 952 (2017).  Plaintiff argues that the arbitration provision in DNP's Terms and Conditions contravenes this rule "because it prevents Plaintiff from pursuing injunctive relief in a representative capacity" (*i.e.*, it contains a class arbitration waiver).

The Ninth Circuit has rejected this argument.  In *DiCarlo v. MoneyLion*, the Ninth Circuit held that so long as (i) an arbitration clause permits *an individual claim* for injunctive relief; and (ii) such claim "could theoretically result in an injunction that broadly affects others," there is no violation of the *McGill* rule.  *See DiCarlo v. MoneyLion, Inc.,* 988 F.3d 1148, 1154 (9th Cir. 2021).

The arbitration provision is silent about the availability of injunctive relief in arbitrations brought in an individual capacity.  (*See* Kim Decl. ¶ 7).  If Plaintiff were to commence an arbitration seeking to obtain his requested injunctive relief, such proceeding certainly could "result in an injunction that broadly affects others." *MoneyLion*, 988 F.3d at 1154.

Accordingly, DNP's arbitration provision complies with the *McGill* rule and is enforceable.

### 2.  Unconscionability

A party seeking to invalidate a contractual provision as unconscionable must prove both procedural and substantive unconscionability.  *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (*citing Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 114 (2000)).  However, "[a] sliding scale is applied so that the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable,

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. **2:23-cv-02968 MWF (RAOx)** | Date: **July 20, 2023** |
| Title: Sangshin Lee v. DoNotPay, Inc. | |

and vice versa." *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 178 (2015). When evaluating procedural unconscionability, courts focus on oppression or surprise that results from unequal bargaining power. *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1133 (2013). When evaluating substantive unconscionability, courts are more concerned with overly harsh or one-sided results. *Id.*

### a. Procedural Unconscionability

"Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013). The analysis for procedural unconscionability "begins with an inquiry into whether the contract is one of adhesion." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126, 251 Cal. Rptr. 3d 714 (2019) (quoting *Armendariz*, 24 Cal. 4th at 113) (internal quotation marks omitted).

Generally, a contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 242, 190 Cal. Rptr. 3d 159 (2015) (quotation omitted). Where a contract is adhesive, the question shifts to "whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." *OTO*, 8 Cal. 5th at 126.

"[A]n arbitration agreement is not adhesive if there is an opportunity to opt out of it…." *Mohamed v Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016). Plaintiff acknowledges that DNP's arbitration provision permits users to opt-out by mail within 30 days but contends DNP's arbitration clause remains an adhesion contract because the opt-out provision is illusory and does not afford the Plaintiff a meaningful opportunity to opt out. (Opposition at 19). However, the fact that an opt-out request must be submitted by mail within 30 days is a common feature which the courts have rejected as a basis to invalidate the arbitration agreement. *See Mohamed*, 848 F.3d at 1211 (no unconscionability despite the requirement that opt-out request be sent by

---

**CIVIL MINUTES—GENERAL**                                                    17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  **2:23-cv-02968 MWF (RAOx)**               Date:  **July 20, 2023**
Title:  Sangshin Lee v. DoNotPay, Inc.

"overnight delivery service"); *Gonzales v Charter Commc'ns, LLC*, 497 F. Supp. 3d 844, 850 (C.D. Cal. 2020) ("the Ninth Circuit repeatedly has rejected claims" that a 30-day opt-out window is insufficient).  Accordingly, DNP's 30-day opt-out provision is not a procedure that suggests unconscionability.  *See Gonzales*, 497 F. Supp. 3d at 850.

Even assuming DNP's terms and conditions were adhesive, the terms and conditions do not appear oppressive.  To determine whether a contract of adhesion is oppressive and therefore procedurally unconscionable, California courts consider several factors, including (1) the relative bargaining power and sophistication of the parties, (2) the complaining parties' access to reasonable market alternatives, and (3) the degree to which an offending provision of a contract is "buried in a lengthy . . . agreement." *Shierkatz Rllp v. Square, Inc.*, Case No. 21-cv-08689-HSG, 2015 WL 9258082, *9 (N.D. Cal. Dec. 17, 2015).

Here, after balancing these factors, the Court does not find the requisite degree of procedural unconscionability arising from DNP's arbitration clause.  While the relative bargaining power between the parties favors DNP and the terms and conditions are presented on a take-it-or-leave it basis, nothing in the record suggests that DNP was the only option for the administrative tasks DNP provides.  Further, the arbitration provision is clearly labeled in the Terms of Service and Privacy Policy with bold text and an isolated title.  *See Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 914, 190 Cal. Rptr. 3d 812 (2015) (a company is "under no obligation to highlight the arbitration clause of its contract, nor [i]s it required to specifically call that clause to [a customer]'s attention.  Any state law imposing such an obligation would be preempted by the FAA.").

Accordingly, the Court determines that Plaintiff does not satisfy his burden of proving procedural unconscionability.  Plaintiff has not shown that his ability to make a meaningful choice about whether to agree to arbitration was impaired.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. **2:23-cv-02968 MWF (RAOx)** | Date: **July 20, 2023** |
| Title: Sangshin Lee v. DoNotPay, Inc. | |

### b. Substantive Unconscionability

Substantive unconscionability focuses on the terms of the agreement and whether those are so "overly harsh" or "one-sided" as to "shock the conscience." *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002). "Although California courts have characterized substantive unconscionability in various ways, all of these formulations point to the central idea that unconscionability doctrine is concerned not with a simple old-fashioned bad bargain but with terms that are unreasonably favorable to the more powerful party." *Tompkins*, 840 F.3d at 1023 (citations and internal quotations omitted).

The Court is not persuaded by Plaintiff's argument that the arbitration provision is "manifestly one-sided." (Opposition at 23). Unlike cases cited by Plaintiff, the arbitration provision here requires all disputes to be arbitrated (regardless of which side raises a dispute) and places no limitation on any statutory rights. *See Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 891 (9th Cir. 2002) (arbitration clause unconscionable where it required employees to arbitrate while allowing employer to sue employees in court). The decisions in *Armendariz v. Found. Health Psychcare Servs., Inc.* and *Greer v. Sterling Jewelers, Inc* are similarly not applicable because the arbitration provision here does not restrict the damages available to the claimant and there is no onerous pre-arbitration program required. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 92, 99 Cal. Rptr. 2d 745 (2000); *Greer v. Sterling Jewelers, Inc.*, No. 18-cv-480-LJO (SKOx), 2018 WL 3388086, at \*8 (E.D. Cal. July 10, 2018).

Plaintiff points to the mutual class arbitration waiver in the arbitration provision and argues that this waiver is, in fact, "one-sided because DNP, a corporation, would likely never bring a class action against its own customers." However, this line of argument has been ruled out by the Supreme Court in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011). *See Carter v. Rent-A-Ctr., Inc*., 718 F. App'x 502, 504 (9th Cir. 2017) ("We have interpreted *Concepcion* as foreclosing any argument that a class action waiver, by itself, is unconscionable under state law or that

---

**CIVIL MINUTES—GENERAL**                                                   **19**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  2:23-cv-02968 MWF (RAOx)**                   **Date:  July 20, 2023**
Title:  Sangshin Lee v. DoNotPay, Inc.

an arbitration agreement is unconscionable solely because it contains a class action waiver").

In sum, the arbitration provision in DNP's Terms and Conditions is not substantively unconscionable and is therefore enforceable.

Accordingly, the Motion is **GRANTED**.  Plaintiff is **ORDERED** to submit his claims to arbitration as provided by his agreement.  9 U.S.C. § 4.

"A district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). Notwithstanding this discretion, the Ninth Circuit's preference is for district courts to "stay[ ] an action pending arbitration rather than dismissing it."  *MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 9 (9th Cir. 2014).  The parties proffer no reason for the Court to depart from the Ninth Circuit's preference in this instance.

Accordingly, the Court **STAYS** this action pending completion of the arbitration. *See* 9 U.S.C. § 3.  The parties shall file a joint status report every 90 days apprising the Court of the status of the arbitration proceedings, with the first report due on **October 23, 2023**.

IT IS SO ORDERED.